```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION

Michael J. Reiser,              :

         Plaintiff,             :

      v.                        :      Case No.  2:11-cv-1010

Commissioner of Social          :      JUDGE GEORGE C. SMITH
    Security,                          Magistrate Judge Kemp

         Defendant.             :
```

                     REPORT AND RECOMMENDATION

                         I.  Introduction

Plaintiff, Michael J. Reiser, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for supplemental security income.  That application was filed with a protective filing date of December 31, 2007, and alleged that plaintiff became disabled on that date.

After initial administrative denials of his application, plaintiff was given a hearing before an Administrative Law Judge on May 11, 2010.  In a decision dated July 29, 2010, the ALJ denied benefits.  That became the Commissioner's final decision on September 29, 2011, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on January 26, 2012.  Plaintiff filed his statement of specific errors on April 19, 2012.  The Commissioner filed a response on June 20, 2012.  Plaintiff filed a reply brief on July 6, 2012, and the case is now ready to decide.

   II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 48 years old at the time of the administrative hearing and who has a high school education, testified as follows.  His testimony appears at pages 39-82 of the administrative record.

Plaintiff last worked at a White Castle restaurant as a shift manager and team member.  He worked the counter, the drive-through area, and occasionally prepared food.  He also had some management responsibilities but could not hire or fire employees.  Prior to that, he worked for the State of Ohio in the Bad Check Unit of the Department of Taxation, which was strictly an office job, and in a warehouse position with the Treasurer of State, dealing with cigarette excise tax stamps.  He lost his job with White Castle because he failed a drug test for marijuana.  Shortly after that, he had knee surgery, and has had problems with his right leg ever since.  He has been told he needs a knee replacement but is too young for the procedure.  He now walks with a cane.

Plaintiff testified that he also suffers from constant back pain.  That condition caused him to stop working for the Department of Taxation because the distance he had to drive was too far.  He has been treated by a chiropractor for his back problem.  Additionally, he suffers from sleep apnea, although he had seen improvement from using a BiPAP machine.  In early 2008, he sought mental health counseling due to some family issues, and has seen a counselor and received medication since then.

On a typical day, plaintiff takes care of his dogs and lies on the couch to watch television.  He does prepare some of his own meals, attends church once a week, does laundry, and occasionally goes grocery shopping.

In response to additional questions from his attorney, plaintiff testified that he has difficulty stooping or bending due to his knee problem and cannot climb steps.  He ices his knee every day to deal with pain and swelling.  He also suffers from intermittent neck pain and migraine headaches, but they respond well to medication.  Additionally, he has developed issues dealing with people.  Finally, he is unable to sit more than an

hour at time due to back pain, and his standing and walking are also severely limited.

### III. The Medical Records

The medical records in this case are found beginning on page 299 of the administrative record. The pertinent records can be summarized as follows. This summary will focus mainly on the records highlighted in plaintiff's statement of errors, including those relating to his back condition, the Bureau of Vocational Rehabilitation evaluation, and records which, according to plaintiff, justify a sentence six remand.

On March 28, 2006, an MRI taken of plaintiff's spine showed lumbar spondylosis with mild dessication and loss of height diffusely of the lumbar disks. Mild facet hypertrophy was seen at L3-4 and a broad-based disk protrusion, as well as other abnormalities, existed at the L4 level. (Tr. 309). He did continue to work after that date, however. An electrodiagnostic exam done shortly thereafter showed only minimal findings of a bilateral radiculopathy. (Tr. 400). Dr. Blood, who saw plaintiff four days after that study, reported positive straight leg raising bilaterally with pain radiating down the legs, more pronounced on the left than on the right. Plaintiff also had decreased extension and bending and demonstrated pain in the L1-2 region. Dr. Blood recommended epidural steroid injections. (Tr. 401-02). These produced dramatic improvement. (Tr. 407).

Plaintiff saw Dr. Gerwitz in April, 2007, and Dr. Gerwitz read an MRI from December, 2006. It showed no significant changes from the 2006 study, and plaintiff was described as "clinically ... doing great." He was continued on conservative treatment, and he was working at that time. (Tr. 409-10). In January of 2008 he reported increased back pain, but straight leg raising was negative and his back was not tender to palpation. (Tr. 504-05).

In February of 2008, Dr. Thompson performed a consultative examination and formed an impression of recent arthroscopic surgery on the right knee and lumbar degenerative disc disease. He limited plaintiff to 30 minutes standing at a time, with no squatting, kneeling, climbing, or repetitive bending or lifting, and lifting ten pounds occasionally.  He had no problems sitting.  (Tr. 736-40).  Dr. Gahman, also a state agency reviewer, evaluated plaintiff's physical capabilities.  He thought that plaintiff could work at the light exertional level but could not climb ladders, ropes or scaffolds and could stoop, kneel, crouch, and crawl only occasionally.  He would also need to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation.  (Tr. 484-91).

Mr. Sours, a consulting psychologist, performed a consultative clinical examination on February 27, 2008. Plaintiff reported a family history of alcoholism, including himself, but said he had been sober for a number of years.  He stated he was depressed and anxious and had attempted suicide in the past.  He also described constant low back pain.  Plaintiff said he had a number of symptoms including memory problems and anger issues.  His activities of daily living were limited.  Mr. Sours diagnosed major depression, generalized anxiety disorder, and oppositional defiant disorder, and rated plaintiff's GAF at 55.  He thought plaintiff could follow instructions with only a mild impairment, and could perform simple repetitive tasks but would have difficulty with complex ones.  Also, plaintiff would have moderate difficulty dealing with others and dealing with work stress.  (Tr. 416-19).  Dr. Chambly, a state agency reviewer, concluded that plaintiff had a personality disorder and that he had some moderate restrictions in work-related areas, particularly in his ability to deal with work stress and to relate to others.  (Tr. 423-39).  A later psychological

evaluation done by Dr. Howard produced a GAF rating of 70; testing showed that plaintiff underperformed and exhibited either low motivation or inconsistent performance. He was seen as having a "high potential for manipulation" and there was a question about his motivation and perseverance. (Tr. 507-20).

The BVR did a vocational assessment over a two-day period in March, 2008. Plaintiff described his limitations as anger management issues, depression, back problems, neck pain, and migraines. His abilities in areas such as interpersonal conduct, cooperation, perseverance, emotional balance and mood, and frustration tolerance were rated "unsatisfactory for work." The vocational staff stated that based on plaintiff's own self-reported issues with anger management and depression, he was not job ready at that time. He was encouraged to obtain mental health counseling. (Tr. 741-48).

The records cited by plaintiff in support of his request for a sentence six remand consist, first, of progress notes from Six County, Inc. indicating that plaintiff had a GAF of 49 and was upset about having been diagnosed with emphysema; that his shortness of breath was getting worse and that it was probably due to some combination of COPD and asthma; that pulmonary function testing showed mild airway obstruction; and that a lumbar MRI from January 14, 2011 showed a slightly more pronounced disk bulge at L4 than was seen in 2008 with apparent compression of the right nerve root at L4-5. (Tr. 967-1022).

### IV. The Vocational Testimony

A vocational expert, Ms. Kaufman, also testified at the administrative hearing. Her testimony begins at page 82 of the record. She characterized plaintiff's past work as a shift manager as semiskilled work and light. The accounts clerk job was sedentary and skilled, and the shipping clerk position was medium and skilled. If plaintiff were limited to light work with

some additional restrictions, he could still perform that latter job as defined in the <u>Dictionary of Occupational Titles</u>.

Ms. Kaufman was asked to assume that plaintiff was limited to lifting ten pounds occasionally, could sit for an unlimited amount of time, and could only stand or walk for fifteen minutes at a time and for no more than two hours in a workday.  He also would be limited to occasional use of stairs, no use of ladders, occasional stooping and crouching, and no bending, kneeling or crawling.  Additionally, she was asked to assume that he had some environmental limitations and would need to use a cane to get to and from his work station.  Finally, he could do only tasks that were not fast-paced or which had strict time limits, and he would work best alone.  With those restrictions, plaintiff could not perform any of his past work.  He could, however, do unskilled sedentary jobs such as table worker or sedentary level office helper.  If plaintiff could not have any interaction at all with others, there would not really be any sedentary jobs he could perform.

V.   <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 10 through 22 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff had not engaged in substantial gainful activity from his alleged onset date of December 31, 2007, through the date of the decision.  As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including degenerative joint disease of the right knee, lumbar spondylosis, chronic bronchitis, sleep apnea, and a personality disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to lift or carry five pounds frequently and ten pounds occasionally, stand for fifteen minutes at a time for a total of two hours in a workday, and climb stairs, stoop and crouch occasionally.  He could not climb ladders, kneel or crawl.  He also could not be exposed to smoke, fumes and gases, and needed to use a cane to walk to and from his work station.  From a psychological standpoint, plaintiff could interact occasionally with coworkers or supervisors, could have only rare and intermittent contact with the general public, and could do only unskilled tasks that were not fast-paced or strict time-limited.  Adopting the vocational expert's testimony, the ALJ found that plaintiff could not do any of his past work but could perform unskilled sedentary jobs such as table worker, packer or office helper.  Because the testimony showed that these jobs exist in significant numbers in the state and national economies, the ALJ concluded that plaintiff was not entitled to benefits.

## VI.   Plaintiff's Statement of Specific Errors

In his statement of specific errors, plaintiff raises a number of issues.  First, he contends that the ALJ did not give enough weight to the Bureau of Vocational Rehabilitation's conclusion that, at least as of the time that BVR conducted a job evaluation, plaintiff was not "job ready" due to anger management issues.  Second, plaintiff argues that the ALJ failed to consider whether his back disorder satisfied Section 1.04 of the Listing of Impairments.  Third, he asserts that the ALJ did not properly evaluate his credibility.  He also asks for alternative relief in the form of a sentence six remand, citing to a number of medical records which post-date the administrative hearing.  The Court generally reviews the administrative decision of a Social Security ALJ under this legal standard:

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

A. Was the ALJ's Decision Supported by Substantial Evidence?

In arguing that the ALJ's decision was not supported by substantial evidence, plaintiff focuses primarily upon the BVR evaluation which showed that he was not work-ready when it was performed. Before dealing with this issue, however, the Court will discuss the question of whether the ALJ erred in failing to discuss specifically the requirements of Section 1.04 of the Listing of Impairments and whether plaintiff's credibility was

properly judged.

Section 1.04 presumes disability when a claimant suffers from certain disorders of the spine, including "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture" which are accompanied by

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)....

According to plaintiff's statement of errors, the diagnostic studies and the reports from Drs. Gerwitz and Blood showed that he had various spinal conditions, including bilateral spondylolisthesis, facet hypertrophy, a bulging disk, spinal stenosis, and foraminal compromise, and also contained evidence both of positive straight-leg raising tests and radiculopathy. He argues that he has shown the existence of a spinal disorder, nerve root compression, and motor and sensory loss, and that it was error for the ALJ not to have considered specifically the question of whether this section of the Listing of Impairments was satisfied.

Most of the ALJ's discussion of the Listing of Impairments focuses on mental impairments, noting only in passing that "there is little to no medical evidence in the record to support a finding that the claimant's impairments ... meet or equal the requirements set forth in the Listing of Impairments, particularly Listings 1.02 and any 3.00 Listings."  (Tr. 14). Section 1.02 deals with major dysfunction of a joint, and Section 3.00 is concerned with the respiratory system.  Thus, it is accurate that the ALJ did not specifically discuss Section 1.04.

In his responsive memorandum, the Commissioner argues that

the ALJ "clearly" considered this Listing (see Doc. 17, at 4). The ALJ's decision itself, however, which made no specific mention of Section 1.04 and no general reference to Section 1.00 dealing with the musculoskeletal system generally, belies this assertion.  And it is true that, under applicable regulations, an ALJ is required, at step three of the sequential evaluation process, to consider whether a claimant's impairment "meets or equals one of our listings ...." 20 C.F.R. §404.1520(a)(4)(iii). The Commissioner's argument therefore seems to be that it was harmless error for the ALJ not to have discussed Section 1.04 because, first, plaintiff had the burden of demonstrating disability at this stage of the process, and because it does not appear that any physician observed either sensory or motor loss, which is one of the requirements of Section 1.04.

   The Court concludes, first, that the record is not quite as clear on this issue as the Commissioner asserts. It is true that Dr. Thompson did not find such evidence when he examined plaintiff in 2008. Dr. Gerwitz, another of the physicians whose report plaintiff relies on, said in his April 3, 2006 letter that "I found his motor exam to be 5/5 throughout" and that plaintiff "did not have any objective sensory deficit." (Tr. 398).  On the other hand, atrophy of the right thigh was noted as early as 2006 (Tr. 304-05), and in Dr. Blood's April 18, 2006 report, he noted both absent medial hamstring reflexes and weakness with toe walking on the left side. (Tr. 401-02). Quadriceps atrophy and a limp were noted on February 22, 2008. (Tr. 413).  Plaintiff also reported numbness in his lower extremities. (Tr. 678). This evidence could support a finding of either motor loss or reflex loss, which are elements of Section 1.04 (and the elements which the Commissioner argues are missing from the record).

   The Commissioner's position is difficult to reconcile with the Court of Appeals' decision in Reynolds v. Comm'r of Social Security, 424 Fed. Appx. 411 (6th Cir. April 1, 2011).  That

case, like this one, involved an ALJ's failure to consider whether the claimant's impairment met or equaled Section 1.04. The ALJ in that case found, at step two of the process, that the claimant suffered from "back pain" (a much less specific finding than the one made in this case, where the ALJ found that plaintiff had lumbar spondylosis).  As the ALJ did here, the Reynolds ALJ made a conclusory determination that the claimant did not satisfy Section 1.00, and then devoted the balance of his discussion to Section 12.04, dealing with affective disorders. As the court noted, "[n]o analysis whatsoever was done as to whether Reynolds' physical impairments (all summed up in his finding of a severe 'back pain' impairment) met or equaled a Listing under section 1.00, despite his introduction concluding that they did not." Reynolds, at *3.  The absence of any meaningful comparison of the claimant's symptoms to any impairment described in Section 1.00 led the court to conclude that the ALJ "skipped an entire step of the necessary analysis. He was required to assess whether Reynolds met or equaled a Listed Impairment (such as the one above), but did not do so." Id.  The Court of Appeals also found that the error was not harmless.  In addition to the fact that a favorable finding at step three would have resulted in an award of benefits, the court noted that "in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence Reynolds put forth could meet this listing." Id. at *4.  Finally, the court observed that the ALJ's failure to evaluate this potentially favorable evidence in light of the requirements of Section 1.04 did not "facilitate meaningful judicial review" and that it was therefore "impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." Id.

Reynolds is, of course, an unpublished decision and, as such, is not binding on this Court.  However, other Judges of

this Court have found its reasoning persuasive. So, for example, in Risner v. Comm'r of Social Security, 2012 WL 893882, *5 (S.D. Ohio March 15, 2012), Judge Spiegel, following Reynolds, remanded a case to the Commissioner where the ALJ provided no reasoning in support of his conclusion that no section of the Listing was met or equaled, holding that "where ... the ALJ fails to complete a required step in the five-step analysis, the proper course is to remand the case for him to complete his task. Requiring a reasoned and explained conclusion is not merely a formalistic requirement [but] a necessary component for this Court to ascertain whether the ALJ's decision was supported by substantial evidence." See also Scott v. Astrue, 2012 WL 1106659, 176 Soc.Sec.Rep.Serv. 552 (S.D. Ohio Apr. 2, 2012), adopted and affirmed 2012 WL 1854729 (S.D. Ohio May 21, 2012)("the administrative law judge erred by skipping a step [step three] of the analysis required by the Commissioner's regulations. On remand, the administrative law judge must actually evaluate the evidence, compare it to the Listings and provide a rationale for his decision to allow for meaningful judicial review").

    This is not to say that the Court is adopting a *per se* rule that every ALJ must discuss in detail any section of the Listing which might conceivably be implicated by the claimant's severe impairments. Although Risner and Scott seem to point in that direction, Judge Deavers has recognized that "a court must read the ALJ's step-three analysis in the context of the entire administrative decision, and may use other portions of a decision to justify the ALJ's step-three analysis." Snoke v. Astrue, 2012 WL 568986. *6 (S.D. Ohio Feb. 22, 2012), adopted and affirmed 2012 WL 1058982 (S.D. Ohio Mar. 28, 2012). Further, in Reynolds, the court found that the claimant had presented evidence from which it was possible to conclude that the requirements of Section 1.04 had been satisfied, and other courts have suggested that this may be a threshold showing in order to obtain a remand

for failing to comply with the Step Three requirement.  See, e.g., McClellan v. Astrue, 804 F.Supp. 2d 678 (E.D. Tenn. 2011)(it is error for the ALJ not to consider a specific listing where there is "a 'substantial question' as to whether the listing was met").  But even if that is the test, as noted above, there is evidence in this record touching on every element of Section 1.04, and the Court cannot find a sufficient discussion of those factors elsewhere in this administrative decision. Whether to credit the evidence which speaks directly to the requirements of Section 1.04, and how to evaluate it in light of those requirements, is the ALJ's task; the Court's role in the decisional process is simply to review such a determination under the "substantial evidence" standard.  That cannot be done here because there is no determination to review.  Consequently, this assignment of error supports a sentence four remand.

The next issue is whether the ALJ properly assessed plaintiff's credibility or whether that issue, too, must be addressed on remand.  Plaintiff, citing to 20 C.F.R. §404.1529 and SSR 96-7p, argues that the ALJ improperly found a lack of objective evidence to support plaintiff's complaints of pain, and that other factors cited by the ALJ, such as plaintiff's "inviting" a confrontation with someone in 2009 and his efforts to conserve his medication (or his difficulty in obtaining it) do not reflect adversely on his credibility.  Plaintiff also faults the ALJ for using his efforts to return to work as evidence that his subjective complaints were not credible.

Plaintiff is correct that an ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking.  Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other

-13-

pertinent factors. 20 C.F.R. §404.1529(c)(3). Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record. See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

Here, the Commissioner argues that the ALJ could reasonably have relied on certain medical reports to determine that, although plaintiff may have been symptomatic, his symptoms were not of disabling severity. For example, during Dr. Thompson's examination, plaintiff was able to "walk independently on flat, level surfaces." (Tr. 737). Dr. Thompson also observed, however, as the ALJ acknowledged, that plaintiff could not squat or kneel, that his gait pattern was abnormal, that he limped on his right leg, and that he could not stand or walk for more than thirty minutes at a time without resting. The ALJ credited some of these findings in his residual functional capacity finding, but not others. Also, the ALJ cited to one statement made in Dr. Priano's report of February 9, 2009, to the effect that plaintiff was "doing well after ACL reconstruction," but that report (Tr. 752) also showed that there were still some limitations in range of motion of the right knee and pain and tenderness as well, probably due to arthritis. It is difficult to see how these reports are inconsistent with plaintiff's testimony that he experiences daily pain and swelling in his knee. The Court also agrees that plaintiff's efforts to obtain vocational services (which resulted in a finding that he was not job-ready) or his stated intent to take on-line courses do not reflect that he was being less than credible about his symptoms. In short, although some of the factors cited by the ALJ may be proper, the credibility discussion included both improper factors and a

-14-

fairly selective reading of the record.  This finding should be revisited on remand.

This leaves only the issue of how the ALJ treated the "not ready for work" evaluation from the BVR.  Plaintiff's primary contention is that the ALJ failed to consider the report in its entirety, focusing only on the conclusion and not on the portions of the report which indicated how plaintiff's emotional issues impacted his ability to perform various work-type functions.  The Commissioner counters that the BVR counselors are considered "non-medical sources" whose opinions cannot be given controlling weight, and that their views about plaintiff's emotional state - views that they had no specific expertise to express - conflicted with the opinions of qualified mental health specialists who reviewed the record.  The Commissioner argues that the ALJ reasonably relied upon these latter opinions as more reflective of the true extent to which plaintiff was limited due to psychological issues.

The ALJ did, of course, have an obligation to consider the BVR report regardless of the fact that it was generated by non-medical sources, and the Commissioner does not argue otherwise.  Having reviewed the ALJ's discussion of the report, the Court is unable to determine the extent to which the ALJ actually considered the report.  While the ALJ has no obligation to discuss each piece of evidence, it is certainly helpful to a reviewing court to have some indication in the administrative decision that the entirety of the record has been taken into consideration.  Here, the brevity of discussion (Tr. 16), coupled with the fact that it is unclear what criteria "beyond the claimant's functional capacity" influenced the report, make it very difficult for the Court to know how the ALJ took into account (if at all) the various observations made by the BVR counselors over the course of the two-day evaluation.  While this issue would probably not provide independent support for a

sentence four remand, since a remand will occur, the ALJ should provide a more considered opinion with respect to the significance of both the conclusions of the BVR counselors and the underlying evidence - i.e., plaintiff's performance on the various tasks assigned to him during the course of the evaluation. It may be that, as the Commissioner suggests, that there are valid reasons for discounting plaintiff's failure to complete these tasks adequately, but the reasons advanced in the Commissioner's memorandum are not to be found in the administrative decision, and there is no way for the Court to know if the ALJ's decision actually relied on that reasoning.

### B. Should the Court Order a Sentence Six Remand?

Because the Court has ordered a remand under 42 U.S.C. §405(g), sentence four, the Commissioner should review the entire record, including evidence which post-dates the prior administrative decision. This disposition moots the request for a sentence six remand. See Barbera v. Comm'r of Social Security, 2012 WL 2458284 (E.D. Mich. June 5, 2012), adopted and affirmed 2012 WL 2389977 (E.D. Mich. June 25, 2012); Brock v. Astrue, 2011 WL 2559526 (S.D. Ohio June 28, 2011).

### VII. Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner of Social Security pursuant to 42 U.S.C. §405(g), sentence four.

### VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>  
United States Magistrate Judge
